UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EARLE BOWNES,

    Plaintiff,

v.

BORROUGHS CORPORATION,

    Defendant.
_____/

Case No. 1:20-cv-964

Hon. Hala Y. Jarbou

## **OPINION**

This is an action claiming discrimination in employment. Plaintiff Robert Earle Bownes alleges that Defendant Borroughs Corporation terminated him on June 29, 2017, treating him more harshly than other employees. Before the Court is Defendant's motion to dismiss the complaint. For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

According to the amended complaint (ECF No. 8), Bownes worked for Borroughs at its Kalamazoo facility from 1981 until June 29, 2017, when Borroughs terminated him. Borroughs told him that it terminated him because he had tested positive for marijuana in a drug test. At the time, Borroughs was allegedly party to a collective bargaining agreement (CBA) which provided that Borroughs could permit an employee who tested positive for a controlled substance to complete a "rehabilitation/treatment program" as a condition for continued employment. (*Id.* ¶ 12; *see* CBA, Art. XVII ¶ 11, ECF No. 10-7.) If the employee refused to complete the program or tested positive for alcohol or a controlled substance a second time, then Borroughs would immediately terminate that employee, unless the employee "comes forward and admits that he has

an alcohol or drug problem after having been rehabilitated," in which case Borroughs would give the employee a second chance at rehabilitation. (*Id.*)

Bownes contends that Borroughs did not give him the opportunity to participate in a rehabilitation program. Nor did it give him the opportunity to take another drug test. Instead, it simply terminated him.

Bownes is black. He alleges that Borroughs has treated white employees who failed a drug test differently. It offered them the opportunity to participate in a rehabilitation/treatment program and allowed them to continue working at Borroughs. He identifies six such employees by their initials in his amended complaint, along with the years in which they tested positive. (*Id.* ¶¶ 18-23.)

Accordingly, Bownes claims that Borroughs discriminated against him in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.201 et seq.

Borroughs argues that the complaint fails to state a viable claim.

## II. STANDARDS

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

Borroughs raises three primary arguments in support of dismissal, none of which are persuasive.

#### A. Statute of Limitations

First, Borroughs argues that the complaint is barred by the applicable statutes of limitations. Borroughs argues that the applicable limitations period is three years, accruing from the date of Bownes's termination on June 29, 2017. Bownes filed his complaint on September 16, 2020, and served it on September 21, 2020, more than three years after his claim accrued.

Borroughs is mistaken about the length of the limitations period. For employment discrimination claims under § 1981 like the one at issue here, the statute of limitations is *four* years, not three. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (6th Cir. 2003) ("We now hold that the four-year statute of limitations set forth in 28 U.S.C. § 1658 does indeed apply to § 1981 claims insofar as they . . . [are] premised upon alleged discriminatory actions occurring

3

after the formation of [an] employment relationship[.]"). Bownes filed his complaint within four years after it accrued. Thus, the claim under § 1981 is timely.

As for the ELCRA claim, the parties agree that the statute of limitations is three years. *See Meeks v. Mich. Bell Tel. Co.*, 483 N.W.2d 407, 409 (Mich. 1991) (citing Mich. Comp. Laws § 500.5805(8), which is now at Mich. Comp. Laws § 500.5805(2)). As Bownes notes, however, the Michigan Supreme Court tolled the statutes of limitations in Michigan for at least 100 days due to the COVID-19 pandemic. The Michigan Supreme Court first issued an order on March 23, 2020, excluding from the time for filing an action the days during the "State of Emergency" declared by the Governor of Michigan. Mich. Sup. Ct., Administrative Order 2020-3 (as amended May 1, 2020). The Michigan Supreme Court later issued another order that resumed the computation of days on June 20, 2020. *See* Mich. Sup. Ct., Administrative Order 2020-18 (June 12, 2020). Thus, "[f]or time periods that started before [the first order] took effect, the filers shall have the number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020." *Id.* Because the Governor declared the state of emergency on March 10, 2020, the first order "enable[s] filers to exclude days beginning March 10, 2020." *Id.*

There are a little over 100 days between March 10, 2020, to June 20, 2020. After adding 100 days to the three-year limitations period for ELCRA claims, the limitations period expired in October 2020, after Bownes served his complaint. Thus, Bownes's ELCRA claim is timely as well.

### B. CBA

Next, Borroughs apparently contends that Bownes cannot bring this action because he did not comply with the grievance and arbitration procedures set forth in the CBA. According to Borroughs, Bownes chose not to file a timely grievance regarding his termination and did not

4

request arbitration. However, nothing in the CBA (which is attached to Borroughs's motion) indicates that the grievance and arbitration procedures are the exclusive means for resolving disputes over Bownes's employment.[1] Bownes does not premise his claims on a violation of the CBA. Moreover, the CBA's procedures for resolving disputes do not preclude him from exercising his *statutory* right to relief by filing a claim in state or federal court. A CBA can waive such rights if it contains a "clear and unmistakable waiver of the covered employees' rights to a judicial forum for . . . claims of employment discrimination." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 82 (1998). "[C]ourts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s 'clear and unmistakable' standard." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999). There is no mention of § 1981 or ELCRA in the CBA. Thus, it does not appear that Bownes waived his right to pursue such claims in this Court. Absent such a waiver, his failure to invoke the grievance and arbitration procedures in the CBA does not bar his complaint.

### C. Failure to State a Claim

Next, Borroughs argues that Bownes does not state a discrimination claim under § 1981 or ELCRA because he does not identify an employee who was offered rehabilitation instead of termination after a positive drug test. To the contrary, the amended complaint identifies several such individuals by their initials and by the general time period in which Borroughs made a decision about their continued employment. Borroughs contends that these individuals do not exist, relying on an affidavit from one of its employees. However, that evidence is not properly before the Court in a motion to dismiss. At this stage, the Court accepts the truth of the allegations

---

[1] The Court can consider the CBA without transforming the motion to dismiss into a motion for summary judgment because the CBA is mentioned in the complaint.

in the complaint, which indicate that Borroughs treated Bownes more harshly than several white employees who received positive drug tests. These allegations are sufficient to state a plausible discrimination claim. Indeed, Borroughs's assertion that the employees specified in the complaint never existed reinforces the point that Bownes has identified those employees with sufficient particularity to state a claim. In other words, if Borroughs can definitively prove that no such employees existed, then it has received sufficient notice of the basis for Bownes's claims to respond to his complaint. At this stage, the Court accepts as true the allegations that such employees did exist and that Borroughs treated them more favorably than Bownes.

Borroughs also contends that it has a "zero tolerance" policy for drug and alcohol use that is "universally applied," such that if illegal drugs or alcohol are discovered in an employee's body while on company premises, that employee will be terminated. (Def.'s Mot. to Dismiss 3, 8, ECF No. 10.) In other words, Borroughs contends that it treated Bownes the same as any other employee in his situation. Again, however, Borroughs supports these assertions with evidence not properly before the Court. Borroughs relies on a document describing the company's rules and an affidavit from its employee. The Court cannot consider this evidence on a motion under Rule 12(b)(6), which is aimed at the sufficiency of the complaint. The Court declines to convert Borroughs's motion into one for summary judgment. A summary judgment motion would be premature because discovery has not taken place. Moreover, the existence of a company policy regarding drug use does not rule out the possibility that Borroughs treated Bownes differently from similarly-situated white employees. Written policies are not always followed. Indeed, the CBA indicates that Borroughs will sometimes offers employees the opportunity for rehabilitation before terminating them following a positive drug test.

In its reply in support of the motion to dismiss, Borroughs also contends that Bownes has asserted a "disparate impact" claim rather than a discrimination claim under § 1981. Borroughs asserts that Bownes failed to plead "purposeful discrimination with intent" and "but-for causation necessary for a successful 1981 claim[.]" (Reply Br. 2, ECF No. 21.) The Court typically does not consider new arguments raised for the first time in a reply brief, but the Court will do so here because Bownes has filed a response (i.e., a sur-reply) to the reply brief.

First, Bownes states a discrimination claim, not a disparate impact claim. Bownes does not allege that Borroughs consistently applied a facially-neutral policy, resulting in a disparate impact on black employees like him. *See Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 576 (6th Cir. 2004) ("Disparate impact analysis is used when an employer's facially neutral policy adversely affects a protected class."). Instead, he claims that Borroughs applied its drug and alcohol policy in a discriminatory fashion toward him. It treated him differently from white employees because of his race. It did not give him the second chance that it gave white employees who tested positive for drugs or alcohol (and who were ostensibly subject to the same company policy).

Second, Borroughs improperly conflates the standard for *proving* a discrimination claim with the standard for pleading one. Bownes need not parrot the words "intentional discrimination" or "but-for causation" to state a claim. It is enough that his complaint contains facts from which to reasonably infer that his race was the cause for Borroughs's decision to terminate him rather than offer him the opportunity for rehabilitation or a second drug test.

## V. CONCLUSION

In summary, Bownes states plausible claims under § 1981 and ELCRA that are not barred by the statute of limitations or the CBA. Consequently, the Court will deny the motion to dismiss. An order will enter in accordance with this Opinion.

Dated:  May 13, 2021                         /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             UNITED STATES DISTRICT JUDGE